IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANA LEAH PUCKETT HUTTON, as )
Executrix of the Estate of ROBERT )
JAMES HUTTON, JR., )
  )
     Plaintiff, )
  )
  )
  )
     v. )         1:14-cv-888
  )
HYDRA-TECH, INC., JERRY L. )
HUDSON, AMERICAN ASSURANCE )
CORPORATION, ALTEC, INC., ALTEC )
LLC, ALTEC INDUSTRIES, INC., ALTEC )
NUECO, LLC, HYCO INTERNATIONAL )
INC. n/k/a WEBER-HYDRAULIK, INC., )
HYCO CANADA, ULC, n/k/a WEBER )
HYDRAULIC HYCO CANADA, HYCO )
ALABAMA, LLC and SUPERIOR )
AERIAL AND EQUIPMENT )
REPAIR, INC., )
  )
     Defendants. )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

     Dana Leah Hutton ("Ms. Hutton"), as the executrix of the estate of Robert James

Hutton, Jr. ("Mr. Hutton"), brought this action for wrongful death against several defendants,

including Jerry L. Hudson and Hydra-Tech, Inc. (collectively as "Hydra-Tech Defendants").

Hydra-Tech Defendants previously filed a motion to dismiss for lack of personal jurisdiction

under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6), (ECF No. 54 at 1–2),

and this Court authorized limited discovery and deferred consideration of that motion. (ECF

No. 89 at 9–10.)  The parties have completed limited discovery, and before the Court is Hydra-Tech Defendants' Renewed Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6).  (ECF No. 120.)  For the reasons that follow, the Court grants Hydra-Tech Defendants' motion to the extent it seeks dismissal for lack of personal jurisdiction.[1]

## I.     STANDARD OF REVIEW

When a nonresident defendant challenges personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the jurisdictional issue is for the judge to resolve with the plaintiff eventually having to bear the ultimate burden of proving jurisdiction by a preponderance of the evidence.  *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  The Fourth Circuit has observed that the plaintiff's burden of proof "varies according to the [procedural] posture of [the] case and the evidence that has been presented to the court."  *Grayson*, 816 F.3d at 268.  Ordinarily, where the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing—relying instead on motion papers, supporting legal memoranda, and allegations in the complaint—the plaintiff only has to make a prima facie showing of personal jurisdiction.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).

However, an "'evidentiary hearing' does not *automatically* involve or require live testimony" but "requires only that the district court afford the parties a fair opportunity to

---

[1] This Court lacks personal jurisdiction over Hydra-Tech Defendants and, therefore, does not address Hydra-Tech Defendants' remaining arguments for dismissal under Rule 12(b)(6) for failure to state a claim.

present both the relevant jurisdictional evidence and their legal arguments." *Grayson*, 816 F.3d at 268. Where the parties have engaged in discovery on the issue of personal jurisdiction and have submitted evidence beyond the pleadings, as in this case, the court "must hold the plaintiff to its burden of proving facts, by a preponderance of the evidence, that demonstrate the court's personal jurisdiction over the defendant." *Id.*; *see also Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft, KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 419–20 (D.S.C. 2013) (holding the plaintiff to a preponderance of the evidence standard because the parties had engaged in jurisdictional discovery); *AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 797 (M.D.N.C. 2009) (same). "[O]nly when a material jurisdictional fact is disputed and that fact overlaps with a fact that needs to be resolved on the merits by a jury might a court defer its legal ruling on personal jurisdiction to let the jury find the overlapping fact." *Grayson*, 816 F.3d at 267.

## II. BACKGROUND

Hydra-Tech, Inc. ("Hydra-Tech") was an Indiana company that was formed in 1981. (ECF No. 122-1 ¶ 2.) It was in the business of building and selling aerial lift trucks. (*Id.* ¶ 4.) Jerry L. Hudson ("Mr. Hudson") served as Hydra-Tech's president and was a shareholder until its dissolution in 2009. (*Id.* ¶¶ 2–3.) Throughout its existence, Hydra-Tech was located in Fort Wayne, Indiana, along with its operations, property, employees, and bank accounts. (*Id.* ¶ 6.)

Over the years, Hydra-Tech produced over 9500 units, selling them throughout the United States, primarily to utilities and tree-trimming companies. (ECF No. 122-2 at 116:12–17; ECF No. 122-1 ¶ 7.) Hydra-Tech referred potential customers to one of its distributors if

one was in the area of the potential customer. (*See* ECF No. 127-2 at 46:16–47:6.) If not, Hydra-Tech would take the order. (*See id.*) Customers could go to Hydra-Tech's website for information on its products and for Hydra-Tech's phone number; however, no orders could be placed from the website. (ECF No. 122-1 ¶ 12; ECF No. 127-2 at 44:11–12, 45:7–12.) All of Hydra-Tech's units were sold "F.O.B. Fort Wayne, Indiana, which meant that the customer took title to and risk of loss of the goods at Hydra-Tech's Fort Wayne facility." (ECF No. 122-1 ¶ 8.)

From 1982 to 1987, MAP Enterprises ("MAP"), a North Carolina company, was Hydra-Tech's distributor in North Carolina and six other states. (ECF No. 122-3 at 10:10–11, 20:19–25; ECF No. 122-1 ¶ 10; ECF No. 127-3 at 21:10–15.) A total of four Hydra-Tech units were sold to MAP, and MAP sold at least one of the four units to an end customer located in North Carolina. (ECF No. 127-3 at 16:17–19, 17:2–7; ECF No. 122-3 at 23:12–24:4.) MAP and Hydra-Tech's relationship ended in 1987, but MAP placed an order with Hydra-Tech for a repair part in 1990. (*See* ECF No. 122-3 at 10:10–11; 127-2 at 126:16–21, 128:4–8.)

At some point in the late 1990s or early 2000s, Morse Manufacturing ("Morse"), a company located in Massachusetts, asked Hydra-Tech for the right to sell Hydra-Tech units in North Carolina as well as other states. (ECF No. 122-2 at 37:8–11; ECF No. 122-4 Resp. No. 5.) Hydra-Tech agreed to Morse's request. (ECF No. 122-4 Resp. No. 5.) It is unclear when Morse and Hydra-Tech terminated their relationship. (ECF No. 122-2 at 37:12–38:4.) However, in 2001, Hydra-Tech sold a unit directly to Surry-Yadkin, EMC, located in North Carolina because Hydra-Tech did not have a North Carolina distributor at that time. (ECF

4

No. 127-2 at 195:14–196:10.) In addition, Hydra-Tech provided quotes to two North Carolina cities in 2002 and 2003. (ECF No. 122-4 Resp. 10.)

In March 2007, Hydra-Tech sold the unit at issue in this case to Davey Tree Expert Company ("Davey Tree"), which was headquartered in Ohio. (ECF No. 122-1 ¶¶ 13–14.) Davey Tree arranged for a common carrier to pick the unit up at Hydra-Tech's facility in Fort Wayne and deliver it to Greensboro, North Carolina. (*Id.* ¶¶ 15–16.) Hydra-Tech then completed a bill of lading to that effect, and the unit was sold F.O.B. Fort Wayne. (*Id.* ¶¶ 16–17.) About a year and a half after the sale to Davey Tree, Mr. Hudson approached Altec, LLC about selling Hydra-Tech. (ECF No. 127-2 at 71:20–72:1.) Mr. Hudson sold all of Hydra-Tech's assets to Altec, LLC and dissolved the company in 2009. (ECF No. 122-1 ¶ 18.)

Around four years later, the incident giving rise to this action occurred. Mr. Hutton, a tree trimmer and Davey Tree employee, was operating an aerial device when it allegedly malfunctioned, causing Mr. Hutton to fall thirty-five feet to his death. (ECF No. ¶¶ 14, 25, 28.) Ms. Hutton's Amended Complaint alleges, among other things, that "Hydra-Tech was responsible for installing, designing, manufacturing and/or constructing" the aerial device and that "Mr. Hudson was the principal owner, sole shareholder and officer of Hydra-Tech." (*Id.* ¶¶ 16, 37.) Ms. Hutton asserts claims of negligence, unfair and deceptive trade practices, and concealment of insurance against Hydra-Tech and, against Mr. Hudson, she asserts claims for piercing the corporate veil, concealment of insurance, and unfair and deceptive trade practices. (*Id.* at 7, 9, 15, 17.)

Hydra-Tech Defendants moved to dismiss the action against them under Rule 12(b)(2), contending that this Court lacked personal jurisdiction over them. (ECF No. 54 at 2.) They

5

further moved to dismiss all claims, except for the negligence claim against Hydra-Tech, under Rule 12(b)(6) for failure to state a claim. (*See id.*) In response, Ms. Hutton requested limited discovery and urged the Court to defer ruling on the motion to dismiss. (ECF No. 66 at 3–4.) The Court held a hearing, and subsequently granted Ms. Hutton's request for limited discovery and dismissed Hydra-Tech's motion to dismiss without prejudice to it being refiled and supplemented following the completion of discovery.[2] Hydra-Tech Defendants now renew their challenge to this Court's exercise of personal jurisdiction over them.

## III. PERSONAL JURISDICTION

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). North Carolina's long-arm statute "permits the exercise of personal jurisdiction . . . to the outer limits allowable under federal due process." *Id.*; *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630–31 (N.C. 1977) (holding that, by enacting N.C. Gen. Stat. § 1-75.4(1)(d), the North Carolina General Assembly "intended to make available to the North Carolina courts the full jurisdictional powers permissible under

---

[2] In this Order, the Court also deferred consideration of Altec Defendants' Motion for Summary Judgment and granted Ms. Hutton additional time for discovery. (ECF No. 89 at 10.)

federal due process"). The two-prong test therefore "merges into [a] single question," allowing the court to proceed directly to the constitutional analysis. *Universal Leather*, 773 F.3d at 558–59; *see ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant. *Universal Leather*, 773 F.3d at 559. One path is general jurisdiction, "which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden*, 134 S. Ct. at 1121 n.6. The other path is specific jurisdiction, which "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Id.* (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

The United States Supreme Court has explained that a court can exercise general jurisdiction over a nonresident corporation only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear*, 131 S. Ct. at 2851). Also called "all-purpose" jurisdiction, the Court noted that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* For a corporation, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (quotation omitted). However, the Supreme Court has "not foreclose[d] the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19 (citation omitted). "[T]he threshold level of minimum contacts to confer general jurisdiction

7

is significantly higher than for specific jurisdiction." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

As for specific jurisdiction, it requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009); *Universal Leather*, 773 F.3d at 559 (stating that the touchstone of the specific jurisdictional inquiry is fairness). A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotations and citation omitted). The Fourth Circuit employs a three-prong test to determine whether the exercise of specific jurisdiction comports with the requirements of due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather*, 773 F.3d at 559 (alteration in original) (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). Only if the court finds that the plaintiff has satisfied the purposeful availment prong does the court need to consider the remaining prongs of the specific jurisdiction test. *Consulting Eng'rs*, 561 F.3d at 278.

## IV.    DISCUSSION

Ms. Hutton argues that Hydra-Tech is subject to both general and specific jurisdiction in North Carolina. However, as to general jurisdiction, Hydra-Tech is not "essentially at

home" in North Carolina. It was incorporated in Indiana, and from 1981 until its dissolution in 2009, it was located there. Hydra-Tech has never had any property, bank accounts, or employees in North Carolina. (ECF No. 122-1 ¶¶ 10, 11.) Nor was it ever registered to do business in North Carolina. (*Id.* ¶ 10.) Ms. Hutton does not advance any exceptional circumstance where Hydra-Tech could be deemed "essentially at home" in North Carolina. Thus, the Court lacks general jurisdiction over Hydra-Tech and proceeds to examine whether the requirements of specific jurisdiction have been met.

### A. Specific Jurisdiction

#### 1. Purposeful Availment

The first requirement of specific jurisdiction is "purposeful availment." The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts" or because of the unilateral actions of another. *Burger King*, 471 U.S. at 475. It is rooted in the concept of minimum contacts and contemplates whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Universal Leather*, 773 F.3d at 559 (alteration in original) (quoting *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989)). When a defendant has created a "substantial connection" to the forum state, "then it has purposefully availed itself of the privilege of conducting business there." *Wright v. Zacky & Sons Poultry, LLC*, 105 F. Supp. 3d 531, 538 (M.D.N.C. 2015) (citing *ESAB Grp.*, 126 F.3d at 625 (explaining that "contacts related to the cause of action must create a 'substantial connection' with the forum state, although this connection need not be as extensive as is necessary for general jurisdiction" (citation omitted))).

9

Ms. Hutton relies on the following to show that Hydra-Tech purposefully availed itself of conducting business in North Carolina:

1. Hydra-Tech's relationship with MAP from 1982-1987, which generated four sales of Hydra-Tech units to MAP, the sale of a repair part to MAP in 1990, and that Hydra-Tech provided MAP with materials for advertising in North Carolina;
2. Hydra-Tech's relationship with Morse, a company located in Massachusetts in the late 1990s or early 2000s, where Morse asked and Hydra-Tech agreed to allow Morse to advertise and sell its units in North Carolina as well as other states;
3. Hydra-Tech maintained a website, which included Hydra-Tech's phone number and information on its products;
4. Hydra-Tech's sale to Surry-Yadkin, EMC, located in North Carolina, after Surry-Yadkin, EMC requested a quote from Hydra-Tech;
5. Hydra-Tech provided quotes to two North Carolina cities in 2002 and 2003;
6. Hydra-Tech completed a bill of lading for the shipment of the subject aerial device from Indiana to North Carolina; and
7. Around June 2008, a warranty claim was made on the aerial device.

(*See* ECF No. 126 at 2–3, 8-10.)

Although the evidence demonstrates that Hydra-Tech had some contacts with North Carolina, those contacts appear minimal, isolated or unsolicited, rather than purposefully directed to North Carolina. *See Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 405 (D.S.C. 2012) ("Minimal, isolated or unsolicited contacts, however, do not give rise to the required purposeful connection between an out of state defendant and the forum state."). As noted earlier, Hydra-Tech maintained no offices, operations, bank accounts, or employees in North Carolina and was never registered to do business in North Carolina. Although Hydra-Tech did have two North Carolina distributors, only one of them, MAP, was located in North Carolina. The record shows that MAP advertised in North Carolina and sold only four of Hydra-Tech's aerial devices and a repair part, all of which occurred more than two decades

before the accident in this case. Further, it was Morse, a Massachusetts company, that initiated contact with Hydra-Tech regarding advertising and selling Hydra-Tech's products in North Carolina, and there is no evidence that any sale to Morse ever took place.

While Hydra-Tech's website provided product information and included Hydra-Tech's phone number, the website did not accept any orders and, despite Ms. Hutton's conclusory statement that it was available to North Carolina residents, there is no evidence that the website targeted or directed any business to North Carolina. *See Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 750–51 (M.D.N.C. 2006) (explaining that defendant's passive website, which did not accept orders but provided information on its products and gave contact information, was insufficient to subject defendant to specific jurisdiction in North Carolina). The sale to Surry-Yadkin, EMC in North Carolina occurred more than ten years before the accident. *See Burger King*, 471 U.S. at 475 (noting that attenuated contacts are insufficient to establish purposeful availment). Hydra-Tech did not initiate contact with Surry-County Yadkin, EMC. Nor did it initiate contact with two other North Carolina cities to which it provided quotes. It is thus significant that much of the evidence outlined above occurred through no conduct *initiated* by Hydra-Tech and directed to North Carolina. W*right*, 105 F. Supp. 3d at 538 (explaining that purposeful availment requires that "the connection to the forum 'must arise out of contacts that the defendant *himself* creates with the forum State'" (quoting *Walden*, 134 S. Ct. at 1122)); *cf. CFA Inst.*, 551 F.3d at 295 n.17 (according "special weight" to the fact that it was the defendant that initiated contact with the plaintiff in the forum).

As to the aerial unit at issue in this case, Hydra-Tech did complete a bill of lading reflecting shipment of the aerial device to Davey Tree in North Carolina. However, this did

11

not involve targeting North Carolina in any way, as it was Davey Tree that initiated contact with Hydra-Tech from Ohio and arranged to have the unit shipped to North Carolina. Ms. Hutton has also failed to explain how the 2008 warranty claim on the aerial device sold to Davey Tree has any connection to any activity allegedly directed at North Carolina by Hydra-Tech.[3]

Ms. Hutton, nevertheless, maintains that she can establish "purposeful availment" based on the stream of commerce theory. (ECF No. 126 at 10.) The stream of commerce theory refers to "'the movement of goods from manufacturers through distributors to consumers,' ending in the forum state." *Syngenta Crop Prot., LLC v. Willowood, LLC*, 139 F. Supp. 3d 722, 730 (M.D.N.C. 2015) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality opinion)). The Supreme Court has stated that "[a] defendant's placement of goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment." *Nicastro*, 131 S. Ct. at 2783 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). However, the mere awareness that a product will sweep into the forum state is not enough; there must be a "specific effort" on the part of the defendant to target the forum state. *Williams v. Romarm*, 116 F. Supp. 3d 631, 640 (D. Md. 2015) (quoting *Nicastro*, 131 S. Ct. at 2792 (Breyer, J. concurring)); *see also Butler v. Ford Motor Co.*, 724 F. Supp. 2d 575, 588 (D.S.C.

---

[3] In fact, Mr. Hudson testified during his deposition that he assumed that the warranty repair took place at Davey Tree's facility in Kent, Ohio, (ECF No. 127-2 at 208:6–9), based on his review of the invoice, (*see* ECF No. 127-4 at 43–44).

2010) (explaining that the stream of commerce theory "cannot supplant the requirement that a defendant some way purposefully avail itself of forum state law").

Ms. Hutton claims that Hydra-Tech "engaged in a regular course of sales in the State of North Carolina from 1982 through 2008," "permitted at least two distributors to advertise and sell" in North Carolina, and "attended national trade shows . . . with knowledge that it was possible to speak with and sell to interested customers in North Carolina." (ECF No. 126 at 11.) The Court rejects Ms. Hutton's argument that Hydra-Tech regularly made sales in North Carolina from 1982 to 2008. As this Court has explained, Hydra-Tech's contacts in North Carolina were isolated and minimum. *See Nicastro*, 131 S. Ct. at 2792 (explaining that there was no regular course or flow of sales in the forum in rejecting specific jurisdiction based on stream of commerce); *Burger King*, 471 U.S. at 476 n.18 (noting that the "reasonable foreseeability of litigation in the forum is substantially diminished" when acts are occasional or isolated and thus create an attenuated affiliation with the forum); *Eagle Coffee Co. v. Eagle Coffee Int'l, Inc.*, No. L-09-2585, 2010 WL 481201, at *4 (D. Md. Feb. 4, 2010) (concluding that seven sales over a twenty-five year period, although all occurring within the past two years, cannot be considered anything more than isolated occurrences). The Court further rejects Ms. Hutton's assertion that "purposeful availment" exists merely because of Hydra-Tech's attendance at national trade shows, which took place outside of North Carolina, *see Nicastro*, 131 S. Ct. at 2786, 2791–92 (rejecting the argument that jurisdiction based on stream of commerce existed because defendant had attended national conventions throughout the country), or because of its website, *see ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) (explaining that defendant did not, through its website, "direct its electronic

13

activity specifically at any target in Maryland" and "did not manifest an intent to engage in a business or some other interaction in Maryland"); *Eagle Coffee Co.*, 2010 WL 481201, at *4 (explaining that defendant did not "purposefully direct[] its activities, electronic or otherwise" to the forum state, as "nothing on [defendant's] website suggests that it intended to target" residents of the forum state "more than residents of any other state").

None of the alleged activity on which Ms. Hutton relies for her stream of commerce argument has anything to do with this case. *See Windsor v. Spinner Indus. Co.*, 825 F. Supp. 2d 632, 639 (D. Md. 2011) (describing conduct of distributors and manufacturers who have no connection to this case "miss[es] the substance of the jurisdictional inquiry, which is whether, focusing upon the relationship between 'the defendant, the forum, and the litigation,' it is fair, in light of the defendant's contacts with that forum, to subject the defendant to suit there" (quoting *Nicastro*, 131 S. Ct. at 2793)); *see also Abraham v. Agusta, S.P.A.*, 968 F. Supp. 1403, 1411 (D. Nev. 1997) (noting that whether the defendant sold other products to Nevada residents is irrelevant to the specific jurisdictional analysis, as it turns on the defendant's contacts in relation to the instant cause of action). The aerial device at issue in this case was not sold into North Carolina. *See Williams*, 116 F. Supp. at 641 ("Where Plaintiffs have not even shown that the firearm used in the shooting was sold into Maryland, the fortuity that the firearm apparently found its way into Maryland is insufficient to establish minimum contacts."); *Windsor*, 825 F. Supp. 2d at 639 (explaining that defendant's online activities are immaterial because the plaintiffs did not purchase their bike on the internet). Nor did the aerial device make it into North Carolina through any intentional conduct directed to North Carolina by Hydra-Tech; rather, it was the unilateral activity of Davey Tree out of Ohio that

14

arranged for the aerial device, which was sold F.O.B. Fort Wayne, Indiana, to be taken to North Carolina. *See Soto v. Meadow Mills, Inc.*, No. 3:09cv292-HEH, 2009 WL 1873785, at \*3 (E.D. Va. June 29, 2009) (declining to exercise jurisdiction over defendant that shipped goods FOB North Carolina when those good were shipped to or through Virginia); *see also Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 494 (E.D. Va. 2003). Thus, Ms. Hutton has failed to establish purposeful availment through the stream of commerce theory.

Ms. Hutton next contends that she may establish purposeful availment through the "conspiracy theory of jurisdiction." (ECF No. 126 at 11.) A defendant can be held to have availed itself of the privilege of conducting business in the forum state if a plaintiff establishes a plausible claim: "(1) that a conspiracy existed; (2) that the . . . defendant[ ] participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [North Carolina] to subject that conspirator to jurisdiction in [North Carolina]." *BeoCare Grp. Inc. v. Morrissey*, 124 F. Supp. 3d 696, 701–02 (W.D.N.C. 2015) (alterations in original) (quoting *Unspam Techs. Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013)). A plaintiff may not satisfy these elements by relying on bare allegations. *Chernuk*, 716 F.3d at 329. A plaintiff must plead these requirements with particularity. *Id.*

Ms. Hutton asserts that the Amended Complaint's concealment of insurance and unfair and deceptive trade practices claims allege that Hydra-Tech Defendants conspired to conceal the existence of an insurance policy that Hydra-Tech had purchased as part of the assets sale with Altec, LLC. (*See* ECF No. 126 at 12.) The Court disagrees. Nowhere in Ms. Hutton's Amended Complaint does she allege facts related to a conspiracy, and certainly not with any

level of particularity. (*See* ECF No. 18 ¶¶ 69–85.) Moreover, the evidence in the record does not plausibly suggest that Hydra-Tech Defendants conspired with any Altec defendant to conceal the insurance policy in this case. Mr. Hudson testified that he did not know of Mr. Hutton's death until he was served with legal documents in September 2014. (*See* ECF No. 122-2 at 157:15–19, 158:1–2.) By that time, the insurance policy had expired. (ECF No. 122-1 ¶ 19 ("The policy period ran from 12/31/2008 to 12/31/2013.).) Ms. Hutton has failed to point to any evidence to the contrary and thus she cannot demonstrate that a plausible conspiracy existed between Hydra-Tech Defendants and any Altec defendant.

Ms. Hutton has failed to establish that Hydra-Tech purposefully availed itself of the privilege of doing business in North Carolina to an extent sufficient to justify specific, personal jurisdiction over it in this case.

### 2. Whether Ms. Hutton's claims arise out of Hydra-Tech's Contacts with the Forum

Even if Ms. Hutton could establish purposeful availment, she must still establish that her claims arise out of Hydra-Tech's contact with the forum. To satisfy this component of specific jurisdiction, her claims must arise out of activities directed at the forum state. *Tire Eng'g & Distrib.*, 682 F.3d at 303. "Where activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied." *Id.* (alteration in original) (quoting *CFA Inst.*, 551 F.3d at 295).

Hydra-Tech's alleged contacts with North Carolina neither relate to, nor give rise to, Ms. Hutton's claims. As earlier noted, the aerial device at issue in this case was ordered by Davey Tree in Ohio who arranged for it to be shipped to North Carolina. There is no nexus

16

between any of Hydra-Tech's alleged contacts with North Carolina and Ms. Hutton's claims in this case. Ms. Hutton, therefore, cannot establish the second part of the test.

## B. Alter Ego

Finally, the Court notes that Ms. Hutton does not argue that this Court has personal jurisdiction over Mr. Hudson based on any individual contacts he might have with North Carolina. Rather, Ms. Hutton attempts to establish personal jurisdiction over him based on the alter ego theory of jurisdiction. (*See* ECF No. 126 at 16.) This theory would ordinarily allow a court to exercise jurisdiction over a party not otherwise subject to personal jurisdiction when that party is an alter ego of a corporation that is subject to personal jurisdiction in the court. *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 & n.18 (5th Cir. 2002)) Because this Court lacks personal jurisdiction over Hydra-Tech, it necessarily follows that it may not exercise personal jurisdiction over Mr. Hudson as Hydra-Tech's purported alter ego.

## V.    CONCLUSION

Ms. Hutton has failed to establish by a preponderance of the evidence that this Court has either general or specific jurisdiction over Hydra-Tech Defendants. The Court, therefore, does not address Hydra-Tech Defendants' remaining arguments for dismissal under Rule 12(b)(6) for failure to state a claim.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Hydra-Tech Defendants' Renewed Motion to Dismiss (ECF No. 120) is GRANTED, based on lack of personal jurisdiction, and they are DISMISSED WITHOUT PREJUDICE.

This, the 30th day of September, 2016.


_____/s/ Loretta C. Biggs_____
United States District Judge