IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DANA LEAH PUCKETT HUTTON, | ) | |
| as Executrix of the Estate of ROBERT JAMES | ) | |
| HUTTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV888 |
| | ) | |
| HYDRA-TECH, INC., JERRY L. HUDSON, | ) | |
| AMERICAN ASSURANCE CORPORATION, | ) | |
| ALTEC, INC., ALTEC, LLC, ALTEC | ) | |
| INDUSTRIES, INC., ALTEC NUECO, LLC, | ) | |
| HYCO INTERNATIONAL, INC. n/k/a | ) | |
| WEBER-HYDRAULIK, INC., HYCO | ) | |
| CANADA ULC, n/k/a WEBER | ) | |
| HYDRAULIK HYCO CANADA, HYCO | ) | |
| ALABAMA, LLC and SUPERIOR AERIAL | ) | |
| AND EQUIPMENT REPAIR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Dana Leah Puckett Hutton ("Mrs. Hutton"), as Executrix of the estate of her husband,

Robert James Hutton, Jr. ("Mr. Hutton"), initiated this action against several defendants,

including Altec, Inc., Altec LLC, Altec Industries, Inc., and Altec NUECO, LLC (collectively,

the "Altec Defendants") alleging claims arising from the death of Mr. Hutton. (ECF No. 18.)

The Altec Defendants are the only remaining defendants in this action. Before the Court are

the Altec Defendants' Renewed Motion for Summary Judgment,[1] (ECF No. 204), and Motion to File a Document Under Seal ("Motion to Seal"), (ECF No. 206). For the reasons stated below, the Court grants each motion.

## I. BACKGROUND

Hydra-Tech, Inc. ("Hydra-Tech"), "a global designer, manufacturer and distributor of aerial devices and digger derricks," (ECF No. 204-4 at 2), manufactured a Lift-All[2] Model LSS-60/70-1S aerial bucket lift ("Bucket Lift") which was sold and delivered to The Davey Tree Expert Company ("Davey Tree") in March 2007. (ECF No. 204-1 at 11; ECF No. 204-2 at 10, 37.) On March 13, 2013, Mr. Hutton, a tree-trimmer employed by Davey Tree, was operating the truck-mounted Bucket Lift when the lower boom lift cylinder ("Cylinder") attached to the lifting mechanism failed, causing Mr. Hutton to fall approximately 35 feet to his death. (ECF No. 18 ¶¶ 14, 25; ECF No. 211-1 at 2–5; ECF No. 211-3 at 3.) The malfunctioning Cylinder was manufactured by Hyco International, Inc. n/k/a Weber-Hydraulik, Inc., Hyco Canada ULC, n/k/a Weber Hydraulik Hyco Canada and/or Hyco Alabama, LLC (collectively, "Hyco"). (ECF No. 211-3 at 5; ECF No. 18 ¶ 17.)

On December 20, 2008—approximately five years prior to Mr. Hutton's fatal, work-related accident—Hydra-Tech and its sole shareholder, Jerry Hudson, entered into an Asset Purchase Agreement ("Purchase Agreement" or "Agreement") with Altec, LLC for the sale

---

[1] The Altec Defendants previously filed a motion for summary judgment on each of Plaintiff's claims against them. (ECF No. 60.) The Court deferred consideration of Defendants' motion at that time, and granted Plaintiff's motion seeking additional time for discovery. (ECF No. 89 at 10.) Discovery in this matter ended on June 27, 2017. (*See* ECF No. 156 at 2.)

[2] Lift-All was a division of Hydra-Tech. (ECF No. 211-13 at 2.)

of certain Hydra-Tech assets.[3]  (ECF No. 204-4; *see* ECF No. 204-8 at 12–13.)  Altec, LLC is among a number of subsidiary companies (including Altec Industries, Inc. and Altec NUECO, LLC) of Altec, Inc., a privately held parent company.  (*See* ECF No. 204-1 ¶ 3; ECF No. 211-2 at 4.)  These "subsidiaries provide equipment and services to the electric utility, telecommunications and construction industries."  (ECF No. 204-1 ¶ 3.)

Under the Purchase Agreement, Altec, LLC's asset purchase did not include the assumption of liability related to the Hydra-Tech assets acquired unless such liability was expressly assumed by Altec, LLC.[4]  (ECF No. 204-4 §§ 2.1, 2.4(a); *see* ECF No. 204-2 at 16.)  Further, under the terms of the Agreement, Hydra-Tech retained liability for products that were manufactured or sold prior to 11:59 PM EST on December 31, 2008, the "Effective Time" of the acquisition.  (*See* ECF No. 204-4 § 2.4(b)); ECF No. 204-5 at 39; ECF No. 204-2 at 36–37.  *See also* ECF No. 204-4 at 35.)  Hydra-Tech's retention of liability included, but was not limited to, "product liability and warranty claims [related] to products manufactured or sold by [Hydra-Tech] prior to the Effective Time."  (ECF No. 204-5 at 39.)  The Agreement also stated that Altec, LLC "shall not be a successor to [Hydra-Tech] for any purpose related to any [l]iability for bodily injury or property damage arising out of or relating to [Hydra-Tech's] products . . . manufactured or sold prior to the Effective Time."  (ECF No. 204-4 § 2.4(c).)  In addition, the Agreement required Hydra-Tech to purchase and maintain insurance

---

[3] Altec, LLC did not acquire all Hydra-Tech assets in the sale.  Schedule 2.2 of the Purchase Agreement contains a list of "Excluded Assets" which "remain[ed] the property of Seller [Hydra-Tech] after the Closing."  (ECF No. 204-5 at 36–37.)

[4] Schedule 2.4(a) of the Purchase Agreement contains a list of the specific liabilities assumed by Altec, LLC.  (ECF No. 204-5 at 38.)

that, among other things, would cover product liability or warranty claims regarding products manufactured by Hydra-Tech prior to closing. (ECF No. 204-4 §§ 3.16, 9.7; ECF No. 204-2 at 39; ECF No. 204-8 at 8.) Following Hydra-Tech's asset sale to Altec, LLC, Hydra-Tech, which had retained some of its assets, continued in existence from December 31, 2008 (the effective date of the purchase) until filing its Articles of Dissolution in June 2009, (ECF No. 204-9).

Plaintiff filed the instant lawsuit seeking recovery from the Altec Defendants based on claims of successor liability, negligence, concealment of insurance policy, and violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). (*See* ECF No. 18 ¶¶ 58–85.) The Altec Defendants have renewed their motion for summary judgment on each of the claims asserted against them by Plaintiff, and they have filed a motion to seal the unredacted copy of the Purchase Agreement.

The Court will, first, address the Altec Defendants' motion for summary judgment.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In opposing a properly supported motion for summary judgment, the nonmoving party cannot rest on "mere allegations or denials," *Liberty Lobby*, 477 U.S. at 248 (internal quotation marks omitted), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the party opposing summary judgment must designate "specific facts" in the record "showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that a party must "cit[e] to particular parts of . . . the record, including depositions, documents, . . . affidavits or declarations, . . . admissions, interrogatory answers, or other materials"). A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (finding that "unsupported speculation . . . is not enough to defeat a summary judgment motion").

The court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The role of the court is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of

admissible evidence, that could carry the burden of proof of [her] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## B.    Discussion

### 1.    Successor Liability Claim

The Altec Defendants argue that Plaintiff's successor-liability claim fails "because Plaintiff cannot satisfy any of the limited exceptions to North Carolina's default rule against successor liability on the part of one corporation that acquires assets from another." (ECF No. 205 at 13–14.) In response, Plaintiff appears to concede that North Carolina law "may not permit [her] to withstand . . . summary judgment related to [s]uccessor [l]iability." (ECF No. 211 at 21.) Yet, Plaintiff argues that "given the circumstances of this case and the actions taken by the Altec Defendants, the Court should extend the law to provide Plaintiff with an avenue by which the Altec Defendants can be held responsible as Hydra-Tech's successor." (*Id.*)

As an initial matter, it is well-settled that a federal court sitting in diversity is obligated to "interpret and apply the substantive law of each state." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). *See Brendle v. Gen. Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974) (explaining that "[a] federal court, sitting in North Carolina in a diversity case, must apply the law as announced by the highest court of that state"); *Anderson v. Piedmont Aviation, Inc.*, 68 F. Supp. 2d 682, 688 n.3 (M.D.N.C. 1999) ("Sitting in diversity this court is bound to apply the applicable state law as it exists and cannot create or expand the common law."). In instances where state law is unclear, such as where a state's highest court "has spoken neither directly nor indirectly on the

particular issue before us," federal courts must "predict how that court would rule if presented with the issue." *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). This Court, therefore, will not "extend the law," as Plaintiff requests; rather, the Court will apply existing North Carolina law to each claim asserted by Plaintiff.

In North Carolina, "[a] corporation which purchases all, or substantially all, of the assets of another corporation is generally not liable for the old corporation's debts or liabilities." *Budd Tire Corp. v. Pierce Tire Co.*, 370 S.E.2d 267, 269 (N.C. Ct. App. 1988). North Carolina courts have recognized four exceptions to this general rule: (1) where "there is an express or implied agreement by the purchasing corporation to assume the debt or liability"; (2) where "the transfer amounts to a de facto merger of the two corporations"; (3) where "the transfer of assets was done for the purpose of defrauding the corporation's creditors"; or (4) where "the purchasing corporation is a 'mere continuation' of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers." *Id.* (citation omitted).

Here, although Plaintiff alleges, in her Amended Complaint, that the Altec Defendants should be liable under the "mere continuation" exception, (*see* ECF No. 18 ¶ 60), Plaintiff seems to abandon this theory in her response brief and, instead, argues that the Altec Defendants implicitly agreed to assume the liabilities of Hydra-Tech, (ECF No. 211 at 21–24).

First, the evidence in the record does not support Plaintiff's allegation, found in her Amended Complaint, that the "mere continuation" exception applies here. Under North Carolina law, "[t]he traditional rule regarding mere continuation is that a corporate successor is the continuation of its predecessor if only one corporation remains after the transfer of

assets and there is identity of stockholders and directors between the two corporations." *G.P. Publ'ns, Inc. v. Quebecor Printing-St. Paul, Inc.*, 481 S.E. 2d 674, 680 (N.C. Ct. App. 1997) (internal quotation marks omitted).  The evidence reveals that prior to, and following, the closing of the asset sale, there was no overlapping of stockholders, directors, or officers between Altec, LLC and Hydra-Tech.  (ECF No. 204-1 ¶¶ 15, 17–19; ECF No. 204-8 at 15–20.)  Hydra-Tech's sole shareholder, Jerry Hudson, testified that, following the asset sale to Altec, LLC, he never held any ownership stake or employment position in Altec, LLC or any of its entities. (ECF No. 204-8 at 15–20.)  Also, there is no evidence in the record of any transfer of ownership interest between Hydra-Tech and Altec, LLC, (*id.*), nor did any corporate officers of Hydra-Tech hold any board positions with any Altec entity.  (ECF No. 204-2 at 35.)

The record further reveals that the transaction between Altec, LLC and Hydra-Tech involved the sale of *certain*—not all—Hydra-Tech assets.  (*See* ECF No. 204-4 § 2.2; 204-5 at 36–37; ECF No. 204-8 at 13.)  Pursuant to the Purchase Agreement, Hydra-Tech retained some of its assets,[5] and following the sale, Hydra-Tech continued in existence until filing its Articles of Dissolution in June 2009, (ECF No. 204-9).  Thus, "the evidence demonstrates . . . that two independent corporations continued to exist . . . following the transaction," and there was no continuity of ownership.  *Atwell v. DJO, Inc.*, 803 F. Supp. 2d 369, 373 (E.D.N.C. 2011).

In addition to determining whether the "mere continuation" exception applies based on continuity of ownership, North Carolina courts also consider the following two factors:

---

[5] As outlined in the Purchase Agreement, Hydra-Tech retained a number of assets including, among other assets: (i) "shares of capital stock . . . held in treasury"; (ii) certain "Seller Contracts"; and (iii) a "2008 Dodge Dakota" vehicle.  (ECF No. 204-5 at 36–37; *see* ECF No. 204-4 § 2.2.)

"(1) inadequate consideration for the purchase; and (2) lack of some of the elements of a good faith purchaser for value." *G.P. Publ'ns*, 481 S.E.2d at 680. In this case, the undisputed evidence shows that, as to the first factor, there was adequate consideration for Altec, LLC's asset purchase. Altec, LLC paid a purchase price that exceeded the initial and final "book value of Hydra-Tech's assets."[6] (ECF No. 204-1 ¶ 15; ECF No. 204-2 at 19–20; ECF No. 211-2 at 17.) With respect to the second factor, the record shows that Mr. Hudson initiated discussions with Altec, his business competitor, about his interest in selling Hydra-Tech's assets. (ECF No. 204-8 at 21.) Mr. Hudson testified that he set the initial price from which the parties negotiated and, ultimately, he was satisfied with the final price paid by Altec, LLC to acquire certain Hydra-Tech assets. (*Id.* at 21–22.) Further, Plaintiff points to no evidence showing that Altec, LLC was not a good faith purchaser for value. The Court, therefore, concludes that Altec, LLC, as the buyer of Hydra-Tech's assets, was not a mere continuation of Hydra-Tech.

Next, as to Plaintiff's contention that Defendants implicitly agreed to assume the liabilities of Hydra-Tech, the Court notes that Plaintiff raises this argument for the first time in her summary judgment response brief. "Fourth Circuit courts have consistently concluded that a party may not use a brief opposing summary judgment to amend a complaint." *Robinson v. Bowser*, No. 1:12CV301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013) (unpublished decision) (citing cases). *See Cloaninger v. McDevitt,* 555 F.3d 324, 336 (4th Cir. 2009) (explaining

---

[6] Financial information, such as the purchase price and the amount of Hydra-Tech's valuation, were redacted in the Purchase Agreement filed as an attachment to the Altec Defendants' Motion for Summary Judgment, (ECF Nos. 204-4—204-7), and this data are the subject of the Altec Defendants' pending motion to seal, (ECF No. 206).

that the court will not consider plaintiff's new claim of malicious prosecution raised "for the first time in his response to the defendants' motion for summary judgment" which differs from the claim alleged in his complaint). "This concept derives from the notice pleading standard, that the defendant should have 'fair notice of what the [plaintiff's] claim is and the grounds upon which it rests.'" *Robinson*, 2013 WL 5655434, at *3 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Plaintiff's claim of successor liability based on an implied agreement to assume liability is, therefore, not properly before the Court. *See Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (affirming the district court's refusal to consider a new theory of recovery raised by plaintiff, "for the first time in opposing summary judgment"); *Robinson*, 2013 WL 5655434, at *3 (holding that "the [c]ourt will not allow Plaintiff to raise a new argument at the summary judgment stage, the basis of which was not evident from the [c]omplaint").

Even assuming that Plaintiff had properly raised this theory in her Amended Complaint, it would fail as a matter of law. As argued by Defendant, North Carolina adheres to the principle that, "where there is an express contract between parties, there can be no implied contract between them covering the same subject matter dealt with in the express agreement." *Snyder v. Freeman*, 266 S.E.2d 593, 602 (N.C. 1980). In this case, Hydra-Tech and Altec, LLC entered into a Purchase Agreement which included express provisions regarding the liabilities being assumed by Altec, LLC, as well as the liabilities being retained by Hydra-Tech. Specifically, the Agreement states, in pertinent part:

(a) <u>Assumed Liabilities</u>. On the Closing Date, but effective as of the Effective Time, Buyer shall assume and agree to discharge only the Liabilities of Seller . . . described in Schedule 2.4(a).[7]

(b) <u>Retained Liabilities</u>. The Retained Liabilities shall remain the sole responsibility of and shall be retained, paid, performed and discharged solely by Seller. "Retained Liabilities" shall mean every Liability of Seller other than the Assumed Liabilities, including, but not limited to, the Liabilities described on Schedule 2.4(b).[8]

(c) <u>No Successor Liabilities</u>. This transaction shall not be deemed to be one by which Buyer is a successor to Seller for any purpose. Except for the liabilities expressly assumed pursuant to Section 2.4(a), Buyer shall assume no liability of Seller existing on the Closing Date, whether known or unknown, disclosed or unidentified, . . . and whether founded in tort or contract. . . . *[T]he parties expressly declare that Buyer shall not be a successor to Seller . . . for any purpose related to any Liability for bodily injury or property damage arising out of or relating to products of Seller . . . manufactured or sold prior to [11:59 PM on December 31, 2008,] the Effective Time.*

(ECF No. 204-4 at §§ 2.4(a)–(c) (emphasis added).)

Plaintiff argues that the Altec Defendants "implicitly assumed liability through their actions," and that these Defendants "tried to get around the somewhat easy standards relating to successor liability that have been provided by law by simply having lawyers craft particular language to include in an agreement." (ECF No. 211 at 24.) The Court finds this argument

---

[7] Schedule 2.4(a) of the Agreement provides a list of the liabilities assumed by Altec, LLC upon purchase of Hydra-Tech's assets. The list of "Assumed Liabilities" includes: (i) unearned revenue as of December 31, 2008; (ii) property taxes accrued as of December 31, 2008; (iii) a vehicle lease; (iv) copier and cell phone service agreements; and (v) software licenses. (ECF No. 204-5 at 38.)

[8] Schedule 2.4(b) of the Agreement provides a list of the liabilities retained by Hydra-Tech upon its sale of assets to Altec, LLC. Among other things, the list of "Retained Liabilities" includes: "any Liability arising out of or relating to products sold or services rendered by Seller to the extent manufactured, sold or rendered prior to [December 31, 2008]; including, but not limited to, product liability and warranty claims with respect to products manufactured or sold by Seller prior to [December 31, 2008]." (ECF No. 204-5 at 39.)

particularly unpersuasive where, as here, the Purchase Agreement included express language, agreed to by the parties, which addressed the fact that Altec, LLC would not assume successor liability for injury resulting from any products manufactured or sold by Hydra-Tech prior to the asset purchase. *See Atwell*, 803 F. Supp. 2d at 372 (finding that there was no implied assumption of liability following a merger where the merger agreement identified those liabilities being transferred to, and assumed by, defendant which did not include the alleged liability at issue).

The Court further finds that Plaintiff's reliance on *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438 (4th Cir. 1990), is misplaced for two reasons. First, as Plaintiff acknowledges, that case applied Virginia law, whereas here, we must apply North Carolina law, *see Food Lion*, 194 F.3d at 512. Second, the court in that case discussed the implicit assumption of liability where the asset purchase agreement at issue "d[id] not explicitly provide for [the purchaser's] assumption of [the seller's] liabilities." *Richmond*, 918 F.2d at 444, 450–51. In contrast, the evidence in this case clearly shows that, as outlined above, the Purchase Agreement expressly provided for Altec, LLC's assumption of specific liabilities which did not include liability related to products manufactured or sold prior to the closing of the asset purchase. The Court, therefore, concludes that, based on the record, there is an absence of evidence to support Plaintiff's claim of successor liability, either under the "mere continuation" exception, or the implied assumption exception. Thus, the Altec Defendants are entitled to judgment as a matter of law as to this claim.

2.    Negligence Claim

Plaintiff contends that after Altec, LLC's acquisition of Hydra-Tech's assets, Altec, LLC "had a duty to warn, and [it] failed to warn, users and purchasers of the [Bucket Lift and Cylinder] of its dangers." (ECF No. 211 at 13.) The Altec Defendants argue that this claim should fail "because, prior to Mr. Hutton's accident, none of the Altec Defendants ever had any relation to or involvement with the Bucket Lift or the Cylinder at issue." (ECF No. 205 at 13.)

Despite Plaintiff's argument that "[s]ufficient evidence exists for a jury to find that the Altec Defendants owed a duty of care," which was breached and proximately caused Mr. Hutton's death, (ECF No. 211 at 14), neither the record nor case law supports this contention. It is well-established under North Carolina law that, "[a]s with other negligence actions, the essential elements of a products liability action based upon negligence are (1) duty, (2) breach, (3) causation, and (4) damages." *Morgan v. Cavalier Acquisition Corp.*, 432 S.E.2d 915, 919 (N.C. Ct. App. 1993) (quoting *Crews v. W.A. Brown & Son, Inc.*, 416 S.E.2d 924, 928 (N.C. Ct. App. 1992)). A manufacturer or seller of a product has a duty to warn the product's users of any dangers associated with use of the product about which the manufacturer has actual or constructive knowledge. *Stegall v. Catawba Oil Co. of N.C.*, 133 S.E.2d 138, 142 (N.C. 1963). Further, in certain circumstances, a non-manufacturing seller has a duty to warn of hazards related to a product's use. *Crews*, 416 S.E.2d at 928. This duty only arises, however, "when the seller 'has actual or constructive knowledge of a particular threatening characteristic of the product' and simultaneously 'has reason to know that the purchaser will not realize the

product's menacing propensities for himself.'" *Id.* (quoting *Ziglar v. E.I. Du Pont De Nemours & Co.,* 280 S.E.2d 510, 513 (N.C. Ct. App. 1981)).

Here, as acknowledged by Plaintiff, the record shows that the Bucket Lift (containing the defective Cylinder) at issue was not manufactured, designed, or sold[9] by the Altec Defendants. (ECF No. 211 at 13; *see* ECF No. 204-1 ¶¶ 4, 7–9; ECF No. 211-3 at 5; ECF No. 211-11 at 2.) The Bucket Lift was manufactured and sold to Davey Tree by Hydra-Tech, (ECF No. 204-1 ¶ 4; ECF No. 204-2 at 10; ECF No. 204-1 at 9–14), and the defective Cylinder in the Bucket Lift was manufactured by Hyco, (ECF No. 211-3 at 5; ECF No. 18 ¶ 17). Notably, Plaintiff cites no legal authority to support her theory that as a non-manufacturer and non-seller of the Bucket Lift and Cylinder at issue, the Court should, nevertheless, consider the Altec Defendants "suppliers" of the product and, therefore, ascribe to them a duty to warn under North Carolina law. (*See* ECF No. 211 at 17–20.) The Court declines to extend the law in this manner and will not ascribe such a duty to warn that is not recognized under North Carolina law. As previously explained, the obligation of a federal court sitting in diversity is to apply existing state law, not "create or expand" the law. *Anderson,* 68 F. Supp. 2d at 688 n.3.

The Court concludes that Plaintiff has failed to offer sufficient evidence showing that the Altec Defendants had a duty to warn of any potential dangers associated with the Bucket

---

[9] Plaintiff makes the argument that the Altec Defendants were "close to a seller of [the Bucket Lift] . . . and, for the purposes of determining liability for negligence, . . . [Altec Defendants] stand in the role of the seller, Hydra-Tech. (ECF No. 211 at 18.) Plaintiff cites no authority for this proposition and, in light of prevailing state law as to negligence, the Court finds this argument without merit.

Lift or Cylinder.[10]  The Altec Defendants are, therefore, entitled to summary judgment on

Plaintiff's negligence claim.  *See Celotex Corp.*, 477 U.S. at 323 (explaining that when the

nonmoving party bears the burden of proof on an issue, the moving party is entitled to

judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on

an essential element of her case").

3.    <u>Fraudulent Concealment of Insurance Policy and<br>Violation of Unfair and Deceptive Trade Practices Act ("UDTPA")</u>

Plaintiff argues that her claims for fraud and violation of North Carolina's UDTPA,

N.C. Gen. Stat. § 75-1.1, are both based on a "clear and intentional omission" by Defendants;

namely, that, "as insureds covered by the AAC policy purchased by Hydra-Tech, [the Altec

Defendants] had a legal duty to disclose the policy to Plaintiff," yet failed to do so.  (ECF No.

211 at 24.)  Defendants contend that Plaintiff's fraud claims fail as a matter of law, in part,

because "the Altec Defendants had no duty to find and contact Plaintiff after Mr. Hutton's

accident to tell her about the policy."  (ECF No. 205 at 14, 28.)  The Court agrees with the

Altec Defendants.

In North Carolina, a fraud claim may be based on "a failure to disclose a material fact

relating to a transaction which the parties had a duty to disclose."  *Hardin v. KCS Int'l, Inc.*, 682

---

[10] Plaintiff relies, in part, on the opinion of Dr. Rolin F. Barrett, Sr., a licensed, professional engineer retained by Plaintiff to examine the hydraulic cylinder of the piston/cylinder mechanism that failed in the Bucket Lift causing Mr. Hutton's fatal accident.  (*See* ECF No. 211-3.)  Dr. Barrett testified that, in his opinion, the Altec Defendants had a "moral obligation" to analyze the design of the Cylinder and notify prior purchasers of its potential danger."  (ECF No. 204-14 at 4–5, 7.)  The Court finds Dr. Barrett's opinion in this regard unavailing, given that such a "moral obligation" is not recognized under North Carolina law.  Further, Dr. Barrett cites no authority for this opinion, testifying that he knew of no "codes, standards, or anything like that, that says there is a law or code" to impose such an obligation on the Altec Defendants, as non-manufacturers and non-sellers of the Bucket Lift and Cylinder at issue.  (ECF No. 204-14 at 7.)

S.E.2d 726, 733 (N.C. Ct. App. 2009) (quoting *Harton v. Harton*, 344 S.E.2d 117, 119 (N.C. Ct. App. 1986)). Such a duty to disclose arises where: (1) there is a fiduciary relationship between the parties to a transaction; or (2) no fiduciary relationship exists yet "a party has taken affirmative steps to conceal material facts from the other"; or (3) no fiduciary relationship exists and "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Id.* (quoting *Sidden v. Mailman,* 529 S.E.2d 266, 270–71 (N.C. Ct. App. 2000)).

With respect to the first circumstance which might give rise to a duty to disclose, the record does not reflect, nor does Plaintiff appear to argue, that a fiduciary relationship existed between Plaintiff and the Altec Defendants. *See Vail v. Vail*, 63 S.E.2d 202, 206 (N.C. 1951) (internal quotation marks omitted) ("In general terms, a fiduciary relation is said to exist [w]herever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.")

With respect to the second circumstance outlined above regarding a duty to disclose, there is no evidence before the Court showing that the Altec Defendants took "affirmative steps to conceal material facts from," *Hardin*, 682 S.E.2d at 733, Plaintiff regarding the existence of an insurance policy. A fact is "material" if when made known to a party, the fact "would have influenced [that party's] judgment or decision." *Godfrey v. Res-Care, Inc.*, 598 S.E. 2d 396, 402 (N.C. Ct. App. 2004) (quoting *White Sewing Mach. Co. v. Bullock*, 76 S.E. 634, 636 (N.C. 1912)).

Here, pursuant to the Purchase Agreement between Hydra-Tech and Altec, LLC, Hydra-Tech bought an insurance policy from American Assurance Corporation ("AAC") that provided coverage for "Product/Completed Operations Liability," for a policy period from December 31, 2008 to December 31, 2013.[11] (ECF No. 204-11 at 2–4; *see* ECF No. 204-10 at 4–5.) The insurance policy covered product liability or warranty claims related to Hydra-Tech products manufactured prior to the closing of the asset sale. (ECF No. 204-2 at 39.) Hydra-Tech was listed as an insured party and Altec, LLC was listed as an additional insured party. (ECF No. 204-11 at 2.) Therefore, these insured parties were the only parties entitled to receive benefits (such as reimbursement for litigation expenses and settlement costs) under the policy. (*See id.*; ECF No. 204-10 at 10–11.) Plaintiff, who was not listed as an insured party nor as beneficiary, had no rights under the insurance policy. (ECF No. 204-10 at 10–13.) Plaintiff argues that she did not learn of the existence of the policy until after it had expired (on December 31, 2013), despite the fact that Defendants knew of Mr. Hutton's accident "the very day it happened on May 13, 2013." (ECF No. 211 at 26.) However, even if Plaintiff had been informed of the existence of this insurance policy, the Court is unclear how such information constitutes a material fact that would have influenced Plaintiff's judgment, since, as neither an insured party nor a beneficiary under the policy, she was precluded from making a claim or receiving benefits under the insurance policy.

Plaintiff makes no argument with respect to the third circumstance which may give rise to a duty to disclose, and the Court finds that this circumstance is inapplicable here. The

---

[11] This policy also incorporated an excess policy—issued by Lexington Insurance Company ("Lexington")—that attached only after the aggregate limits of the AAC policy had been reached. (ECF No. 204-11 at 4, 6–48; ECF No. 204-12 at 11.)

Court, therefore, concludes that, as to Plaintiff's fraud-based claim of concealment of insurance policy, Plaintiff has failed to establish that the Altec Defendants had an affirmative duty to disclose. As a result, Plaintiff's fraud claim fails, and the Altec Defendants are entitled to judgment as a matter of law.

As to Plaintiff's UDTPA claim, because this claim is based on the same allegations supporting Plaintiff's fraud claim, it must likewise fail. *See Childers v. Hayes,* 336 S.E.2d 146, 149 (N.C. Ct. App. 1985) (affirming the trial court's dismissal of plaintiff's UDTPA claim because the fraud and negligence claims, on which the UDTPA claim was based, had been properly dismissed). The Altec Defendants are, therefore, entitled to judgment as a matter of law on Plaintiff's UDTPA claim.

## III.    MOTION TO SEAL

The Court will next address the Altec Defendants' Motion to Seal. Defendants move this Court to file under seal the confidential and privileged portions of the Asset Purchase Agreement, filed as Exhibit D to their renewed motion for summary judgment. (*See* ECF No. 207.) Specifically, the Altec Defendants seek to seal portions of paragraphs 2.3, 2.8(a), and 2.8(e)(iii), on pages 2, 3, and 4 of the Asset Purchase Agreement. (ECF No. 207 at 2–3; *see* ECF No. 204-4 ¶¶ 2.3, 2.8(a), 2.8(e)(iii).)

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* "The common law," however, "does not afford as much substantive protection to the

interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265–66 (quoting *Rushford*, 846 F.2d at 253). The First Amendment presumptive right of access, in contrast, extends "only to particular judicial records and documents." *Id.* at 266. Further, the First Amendment presumptive right of access may only be restricted upon a showing that such a restriction is "necessitated by a compelling government interest and . . . narrowly tailored to serve that interest." *Id.* (internal quotation marks omitted).

"When presented with a request to seal[12] judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Substantively, a district court must "first 'determine the source of the right of access with respect to each document.'" *Doe*, 749 F.3d at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576). The Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Id.* at 267. Therefore, the First Amendment right of access applies in this case, as the document that the Altec Defendants have moved to seal was filed with the Court in support of a summary judgment motion.

---

[12] Courts construe a request to redact a document as a request to seal in part. *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 424–25 (M.D.N.C. 2011) (collecting cases).

Procedurally, a district court presented with a sealing request must "(1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Id.* at 272. Local Rule 5.4 outlines similar requirements.[13] LR 5.4. The burden rests on the party seeking to keep information sealed. *Va. Dep't of State Police*, 386 F.3d at 575. Here, the Altec Defendants, as the party seeking to maintain the confidentiality of these documents, bear this burden.

Considering both the substantive and procedural requirements necessary to rebut the First Amendment presumption of public access to the Purchase Agreement, the Altec Defendants have satisfied their burden. First, public notice of Defendants' request presently before the Court was given in July 2017, when Defendants filed their motion and supporting brief. (*See* ECF No. 207.) No objection has since been raised. Next, Defendants' interests in preserving the confidentiality of sensitive business information—namely, the specific purchase price paid by Altec, LLC for its acquisition of its competitor's assets, as well as the difference between the purchase price and the appraised book value of Hydra-Tech's assets—are sufficiently compelling to overcome the First Amendment presumptive right of access. *See Bon Vivant Catering, Inc. v. Duke Univ.*, No. 1:13CV728, 2016 WL 7638284, at *2 (M.D.N.C. June 14, 2016) ("Courts often determine that the sensitive and confidential nature of financial

---

[13] These requirements are: (1) stating "the reasons why sealing is necessary;" (2) explaining "why less drastic alternatives to sealing will not afford adequate protection;" (3) "[a]ddress[ing] the factors governing sealing of documents reflected in governing case law;" and (4) stating "whether permanent sealing is sought and, if not, stat[ing] how long the document should remain under seal and how the document should be handled upon unsealing." LR 5.4(b).

information warrants the sealing of such materials."); *Sick, Inc. v. 21st Century Software, Inc.*, No. CCB-11-2890, 2012 WL 4076157, at *8 (D. Md. Aug. 22, 2012) (granting motion to seal document containing pricing information). Further, the Altec Defendants' proposed redaction, which appear narrowly tailored to serve their compelling interests, is a less drastic alternative to sealing the entire document. Sealing the entire Purchase Agreement would unnecessarily diminish the public's right of access. The Court will, therefore, grant Defendants' motion to redact paragraphs 2.3, 2.8(a), and 2.8(e)(iii) of the Purchase Agreement.

## IV.    CONCLUSION

Based on the above, the Court concludes that no genuine issues of material fact exist as to Plaintiff's claims of successor liability, negligence, fraudulent concealment, and violations of the UDTPA. Accordingly, the Altec Defendants are entitled to summary judgment on each of Plaintiff's claims against them. The Court further concludes that the Altec Defendants have carried their burden of satisfying the requirements to permanently seal, in part, portions of the Purchase Agreement. The Court will, therefore, permanently seal the unredacted version of the Purchase Agreement filed by the Altec Defendants as Exhibit D to the motion for summary judgment. A redacted version of Exhibit D, (ECF No. 204-4), shall be accessible to the public.

For the reasons state herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that the Altec Defendants' Renewed Motion for Summary Judgment, (ECF No. 204), is GRANTED, and this matter is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Altec Defendants' Motion to File a Document Under Seal, (ECF No. 206), is GRANTED, and the unredacted version of Exhibit D to the Altec Defendants' Renewed Motion for Summary Judgment, (ECF No. 206-1, 206-2, 206-3, 206-4), is and shall be permanently sealed. A redacted version of Exhibit D, (ECF No. 204-4, 204-5, 204-6, 204-7), shall be accessible to the public.

A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This, the 15th day of March, 2018.


/s/ Loretta C. Biggs
United States District Judge